## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **JAMES B. CARTER, JR.**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**C.R. ENGLAND, INC.**<br><br>    Defendant. | **CASE NO. 6:20-CV-01108**<br><br><br>**JUDGE MICHAEL J. JUNEAU**<br><br>**MAGISTRATE CAROL B. WHITEHURST** |

### DECLARATION OF JANIS P. PRESSLEY IN SUPPORT OF DEFENDANT C.R. ENGLAND, INC.'S (1) MOTION TO COMPEL INDIVIDUAL ARBITRATION AND (2) MOTION TO TRANSFER VENUE

I, Janis P. Pressley, declare as follows:

1.      I am the Director of Human Resources for C.R. England, Inc. ("C.R. England"). Unless otherwise stated, the facts set forth herein are based upon my own personal knowledge and experience with C.R. England, and information available to me from C.R. England's files and records in the above-referenced capacity. If I were called upon to testify to such facts, I could and would competently do so.

2.      C.R. England is a Utah corporation founded in 1920 that is headquartered in Salt Lake City, Utah.

3.      C.R. England's payroll, accounting, and finance departments, which are responsible for issuing payments to its employees, are all housed in the company headquarters in Salt Lake City, Utah.

4.      C.R. England specializes in transporting its customers' temperature-sensitive freight (such as fresh produce, meat, dairy products, beverages and chemicals) by tractor-trailer from pick-up point to ultimate destination throughout the United States.

5.      C.R. England employs truck drivers to transport its customers' freight.

6.      On or about June 5, 2017, James B. Carter, Jr. ("Plaintiff") and C.R. England entered into a Driver Education and Employment Contract (the "Contract").  A true and correct copy of the Contract signed by Plaintiff from C.R. England's personnel records, and as maintained in the ordinary course of business, is attached hereto as **Exhibit 1**.

7.      On or about June 19, 2017, Plaintiff and C.R. England entered into a Mutual Arbitration Agreement (the "Arbitration Agreement").  A true and correct copy of the Arbitration Agreement (signed by Plaintiff on June 5, 2017 and C.R. England on June 19, 2017) from C.R. England's personnel records, and as maintained in the ordinary course of business, is attached hereto as **Exhibit 2**.

8.      Plaintiff had the option of rejecting the Arbitration Agreement without ever entering into it (i.e., the ability to not execute the Agreement).  Once he voluntarily chose to execute the Arbitration Agreement, Plaintiff also had the opportunity to revoke his consent to the Arbitration Agreement by providing written notice of such revocation to C.R. England within 30 days of the date he signed the Agreement.  According to C.R. England's records, it did not receive a written notice of revocation from Plaintiff within 30 days of the date he signed the Arbitration Agreement or ever.

9.      Plaintiff executed both the Contract and the Agreement in Salt Lake City, Utah, near or during the time he attended the Premier Truck Driving School.

10.      After Plaintiff completed his education at the truck driving school and obtained his commercial driver's license, he was hired by C.R. England and began training with a more experienced co-driver. C.R. England's records indicate that Plaintiff was picked up by his trainer in Salt Lake City, Utah for his first route. Additionally, C.R. England's records indicate that Plaintiff was dispatched (i.e., received load assignments and instructions) from Salt Lake City, Utah, and that all of his managers were based in Utah. Plaintiff's records further indicate that he

was employed for only a few weeks before abandoning his employment and that he never completed his training with his trainer.

11.     Plaintiff's payroll taxes were also paid to the state of Utah.

12.     C.R. England does not currently have, and to my knowledge based on a reasonable investigation, has never had, a terminal in the state of Louisiana.

13.     I have reviewed Plaintiff's driving records maintained by C.R. England. According to those records, Plaintiff never picked up or dropped off a load in Louisiana. Plaintiff was assigned to the over-the-road division and drove throughout the United States. Plaintiff's driving records indicate that one route took him and his co-driver through Louisiana for a total of 280 miles on route to another destination. These miles account approximately 2% of the total miles Plaintiff drove with his co-driver. Indeed, of the 13,867 miles Plaintiff and his co-driver drove, nearly 98% of the miles were driven in other states. In fact, Plaintiff's driving records indicate that he and his co-driver drove more miles in Utah and 17 other states than he did driving in Louisiana.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Colton, California, on November 30, 2020.

_Janis P. Pressley_

Janis P. Pressley

# EXHIBIT 1



## Driver Education and Employment Contract
### Premier (UT), Non-Veteran

*This page is an employment contract with C.R. England in which C.R. England agrees to pay for the cost of the truck driving program detailed in the Enrollment Agreement in return for work as a truck driver for C.R. England for a specified amount of time. A breach of this contract will result in immediate liability to pay C.R. England the full balance of your tuition and an early buyout cost. The Contract is specific to the state of the school you are attending and any applicable military service.*

This Driver Education and Employment Contract ("Contract") is entered on 06/05/2017 (the "Effective Date"), in the State of Utah by and between C.R. England, Inc. ("C.R. England"), a Utah corporation located at 4701 West 2100 South, Salt Lake City, Utah 84120 and James B. Carter ("you" or "Driver"). In consideration of the parties' respective promises in this Contract and other good and valuable consideration, you and C.R. England agree as follows:

1. Education and Employment. In exchange for your promise to work as a truck driver exclusively for C.R. England for nine (9) months as provided in this Contract and your execution of a promissory note ("Tuition Note") for the unsubsidized cost of tuition, C.R. England will provide its Premier Truck Driving School Driver Education Program to you on the terms described in the Enrollment Agreement. C.R. England also agrees to employ you, subject to the terms and conditions stated below.

   You will not be employed by C.R. England during your Truck Driving School program and thus will receive no pay during this period. You will not become an employee of C.R. England, and will not receive any pay, until you meet all the conditions listed below.

   C.R. England agrees to employ you and you agree to be employed by C.R. England as a truck driver when you meet all of the following conditions:

   (a) You successfully complete all requirements of the Truck Driving School program;

   (b) You submit a written application to C.R. England, in form provided by C.R. England, and satisfy C.R. England's standard criteria regarding work history, motor vehicle record and criminal background check;

   (c) You pass a Department of Transportation drug test and/or hair follicle test;

   (d) You submit to, and pass, a medical examination in accordance with regulations issued by the Department of Transportation;

   (e) You successfully complete road and range driving evaluation administered by C.R. England;

   (f) You obtain a valid CDL.

   You agree to use your best efforts and to work diligently to meet all of these conditions.

2. Duties of Driver. You agree that at all times during the term of your employment as defined in paragraph 3 below, you shall devote all of your working time to the performance of your duties to C.R. England under this Contract. Your duties are to act as a commercial truck driver for C.R. England and fulfill all related duties, including all of the requirements and conditions set forth in the C.R. England Driver Employee Policy Manual (the "Manual") as amended from time to time. You agree that you will not, directly or indirectly, engage or participate in any activities at any time during the term of this Contract in conflict with your duties under this Contract.

3. Term of Employment. You agree that, after the conditions stated in paragraph 1 are met, you will work as a truck driver for C.R. England and no other competing trucking company for a period of nine (9) months after the date you are first dispatched by C.R. England, subject to termination by C.R. England prior to the end of the term pursuant to paragraph 4, below. After the nine (9) month term, you or C.R. England may terminate your employment at any time and for any

reason. You acknowledge that, at great cost, C.R. England has provided, or will provide, your driver education, and that C.R. England would be damaged by your failure to complete the nine (9) month term of this Contract.

4. Termination of Employment. During the nine (9) month term, your employment may only be terminated for the following reasons: (a) by C.R. England for Due Cause, effective immediately; (b) by mutual agreement between you and C.R. England; (c) upon your death or upon your developing a disability such that you are no longer able to legally drive; or (d) by C.R. England without Due Cause. For the purposes of this Contract, "Due Cause" means (i) your breach of this Contract; (ii) your violation of any of the requirements or conditions set forth in the Manual; or (iii) your violation of or failure to remain in compliance with any federal or state regulations applicable to your position as a driver of commercial motor vehicles in interstate commerce. If you are terminated by C.R. England without Due Cause, C.R. England shall cancel the Tuition Note and, in addition, paragraphs 5 and 6 shall not apply.

5. Promise Not To Work for a Competitor. You acknowledge that C.R. England has made a substantial financial commitment to you by promising to provide the Premier Truck Driving School Driver Education at no initial cost to you. You agree that C.R. England is entitled to recover its investment through your commitment to drive exclusively for C.R. England for a minimum period of nine (9) months, and that C.R. England will suffer harm should you instead drive for one of C.R. England's competitors during this nine (9) month period.

   (a) Therefore, you agree that, during the nine (9) month period of your required service to C.R. England, you will not, directly or indirectly, provide truck driving services to any C.R. England competitor. Even if you leave C.R. England before completing the nine (9) months of driving, you are barred from driving for any C.R. England competitor until nine (9) months after you started driving for C.R. England. A "competitor" means any motor carrier that provides a service offered by or similar to a service offered by C.R. England (transportation of goods by commercial motor vehicle) during the time you work for C.R. England. If C.R. England terminates your employment without Due Cause, the non-compete provisions specified in this paragraph shall not apply.

   (b) You acknowledge that compliance with the restrictions and obligations set forth in this paragraph are necessary to protect C.R. England's investment in your driver education and that a breach of your obligations pursuant to this paragraph will harm C.R. England in ways that cannot be quantified. Consequently, you agree that in the event you drive for a competitor or threaten to drive for a competitor during the nine (9) month period, C.R. England shall be entitled to a temporary restraining order, a preliminary injunction, and/or a permanent injunction to prevent you from doing so.

   (c) Nothing in this Contract shall be construed to prohibit C.R. England from also pursuing any other available remedy or from seeking to enforce any of the restrictive terms to a lesser extent than that set forth herein, or from seeking any remedies available against any competitor motor carrier who hires you in violation of this Contract. All remedies shall be cumulative.

6. Document not found.

7. Early Buyout. At any time prior to your completion of the full nine (9) month term of your employment with C.R. England, you may terminate your employment obligation by 1) paying in full the balance of your Tuition Note, and 2) paying to C.R. England $2,500.00 (the "Buyout Cost"). Your obligations under this Agreement will continue until both the Tuition Note and the Buyout Cost are paid in full. C.R. England will not accept installment payments on either the Tuition Note or the Buyout Cost. The Buyout Cost is to compensate C.R. England for its substantial investment in your recruiting and training and the return on that investment it would have received if you had completed the entire term of this Agreement.

8. Driver Compensation. As compensation for the driving services to be rendered by you under this Contract, and as consideration for your promises and covenants herein, C.R. England will pay you the wages, benefits and other compensation set forth in the Manual and as stated by C.R. England from time to time, and will also provide the Educational Assistance Program described below. Upon the termination of employment, as defined in paragraph 4 of this Contract, you authorize C.R. England to deduct and recoup any amount remaining due and owing to C.R. England pursuant to paragraph 6 of this Contract from any compensation due and owing to you from C.R. England. C.R. England may unilaterally change at any time, by written amendment, the terms and conditions of the compensation set forth in the Manual so long as your overall compensation is not materially reduced, and you hereby consent to all such amendments and agrees that such amendments shall be binding upon you.

9. Educational Assistance Program. When you have completed the nine (9) month term of this Contract, you will automatically become eligible for C.R. England's Educational Assistance Program, which is described in the summary plan description that you may obtain from the C.R. England Department of Human Resources. The Educational

Assistance Program will pay, on your behalf, any amounts owing on the Tuition Note, up to $5,200 per calendar year.

10. Entire Agreement. This Contract, together with the Enrollment Agreement and the Tuition Note, contains the entire agreement and understanding by and between C.R. England and you with respect to the subject matter contained herein and no representations, promises, agreements or understandings, written or oral, concerning this subject matter, shall be of any force or effect. This Contract may not be modified except by a writing signed by both you and C.R. England. This Contract shall be binding upon and inure to the benefit of C.R. England and you, C.R. England's legal representatives, and C.R. England's successors and assigns. However, you may not assign your duties under this Contract.

11. Severability. If one or more of the provisions contained in this Contract is deemed invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the validity and enforceability of the other provisions.

12. Governing Law and Venue. You and C.R. England agree that this Contract and its construction and interpretation shall be governed by the laws of the State of Utah, and any claim, litigation or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Salt Lake City, Utah. You hereby consent to personal jurisdiction and venue in such court. Notwithstanding any other provision of this Contract, if you have executed an arbitration agreement with C.R. England, the terms of the arbitration agreement shall govern any claims or disputes between you and C.R. England arising from or related to this Agreement.

You acknowledge that you have read the terms of this contract and have had the opportunity, if you desired, to consult with an attorney of your choice prior to signing below.

In witness whereof, C.R. England, Inc. and Driver have duly executed this Contract as of the date, year and place first above written.

**Driver**

NAME: James B. Carter
ADDRESS: 121 capri ct.
houma, LA, 70364
HOME PHONE: 985-709-9165
CELL PHONE: 985-855-4868
APPLICATION ID: 2889594

**C.R. England, Inc.**

DATE: 06/05/2017         BY: Jeffrey Knight's Signature

Jeffrey Knight, Director of Schools
ITS: Authorized Representative of This School

Username: da_real_carter45@yahoo.com
Date: 06/05/2017
IP Address: 107.77.245.11

Legal signature: *James B Carter Jr*

©2017 C.R. England, 4701 W 2100 S, Salt Lake City, UT 84100, United States. All Rights Reserved. ©2017 C.R. England, 4701 W 2100 S, Salt Lake City, UT 84100, United States. All rights reserved.

# EXHIBIT 2



## Mutual Arbitration Agreement

*C.R. England would like to solve any differences that may arise through arbitration instead of the court system. An arbitration agreement is a contract in which you agree that you may raise certain claims only in an arbitration proceeding and not a lawsuit. An arbitration is similar to a trial, in that there is a decision maker (the arbitrator), who decides issues as a judge would.*

*C.R. England's Mutual Arbitration Agreement is voluntary, please indicate below whether you agree to arbitrate or not. This decision will not affect your eligibility for employment by the company.*

This agreement ("Agreement") is entered into between C.R. England, Inc. ("Company"), on the one hand, and James B. Carter Jr ("Employee"), on the other hand (collectively the "Parties," individually each a "Party").

The Parties recognize that differences may arise between them in the course of the employment relationship. Most disputes can be resolved informally at a personal level through discussions between the Employee and the Employee's driver manager or other appropriate Company representative. However, because not all disputes can be resolved internally, the Company and the Employee wish to adopt a dispute resolution procedure that will avoid the delay, expense and burden of litigation in the civil court system and, by this Agreement, waive their right to pursue "Covered Claims" (as defined below) in civil court. By entering into this Agreement, both Parties intend to gain the advantage of a speedy, economical, impartial and informal dispute-resolution procedure. This Agreement is effective as of the date it is signed by the parties.

The parties agree as follows:

1. **Scope**   Any and all Covered Claims (as defined below) between Employee and the Company shall be submitted to and resolved exclusively by final and binding arbitration in accordance with this Agreement.

2. **Covered Claims**   The term Covered Claims includes all claims or disputes, whether or not arising out of the Employee's employment by the Company, that the Company may have against the Employee, or that the Employee may have against the Company or against its directors, officers, shareholders, employees or agents. However, Covered Claims does not include those claims set forth below in Paragraph 3 of this Agreement. Covered Claims include, but are not limited to, any claim or dispute of any nature relating to claims of employment discrimination or harassment or retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or any other form of compensation, failure to provide rest or meal periods, failure to pay on time, wage statement violations, tortuous acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, or violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act. Unless expressly excluded under Paragraph 3 below, Covered Claims shall include any and all procedural, substantive and gateway issues, including, without limitation, any dispute between the parties relating to the scope of the arbitrator's powers, the interpretation or enforce-ability of this Agreement or any part thereof, or the arbitrability of any dispute.

3. **Excluded Claims**   The following claims are not Covered Claims and are not subject to arbitration under this Agreement:

    (a) any dispute regarding the meaning, interpretation or enforce-ability of Paragraph 5, below;

    (b) any claim covered by state unemployment insurance, state or federal disability insurance, and/or state workers compensation benefit laws, except that any claim alleging retaliation by the Company related to the Employee's pursuit of remedies under these laws shall be subject to arbitration under this Agreement;

    (c) any claim for benefits under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), but only until the administrative procedures stated in the employee benefit plan have been exhausted, at which point any further appeal shall be a Covered Claim under this Agreement;

    (d) any administrative claim or charge with the Equal Employment Opportunity Commission (EEOC) and/or state and

local human rights agencies to investigate alleged violations of laws enforced by the EEOC or those agencies.

(e) any claim under the National Labor Relations Act;

(f) any other claim that is not subject to arbitration by operation of law.

A Party asserting a claim pursuant to sub paragraphs (b) through (f) above shall have the option of seeking any and all available relief in the proper administrative forum or other appropriate tribunal. If a Party elects to do so, such Party shall, after exhausting administrative remedies, submit any further and remaining Covered Claims for relief to arbitration pursuant to this Agreement. By responding to an administrative claim, a Party does not, and shall not be deemed to, waive any of its rights under this Agreement. The Arbitrator shall treat a decision of an administrative agency in the same manner as it would be treated by a court of law.

4. **Governing Law** This Agreement shall be governed and construed in accordance with the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1, et seq., and/or the laws of the State of Utah (without regard to conflict of law principles), including but not limited to, the Utah Uniform Arbitration Act (UUAA), Utah Code §§ 78B-11-101, *et seq.*

5. **Class Action/Collective Action/and Other Group Proceeding Waivers**

   (a) **Only Individual Claims Permitted.** All Covered Claims under this Agreement shall be submitted and arbitrated on an individual basis only. The Parties expressly waive any right to submit, initiate, or participate in any class, collective, consolidated, representative or joint action involving any other employee or contractor of the Company, whether as a plaintiff, claimant, or member of an alleged class or group, regardless of whether the action is filed as a lawsuit, arbitration or any other type of proceeding.

   (b) **Judicial Resolution.** In the event that a dispute arises with respect to the interpretation or enforce-ability of this Paragraph 5 (a "Paragraph 5 Dispute"), such dispute shall be resolved by a court of competent jurisdiction located in either the State of Utah or the Employee's state of residence while employed by the Company, and not by arbitration. An arbitrator shall have no power or authority to adjudicate a Paragraph 5 Dispute, regardless of whether the arbitrator has already commenced the process of adjudicating a Covered Claim.

   (c) **Procedure.** In the event of The procedure for determining a judicial resolution of a Paragraph 5 Dispute shall depend on whether one of the Parties has already initiated a lawsuit involving a Covered Claim. If such a lawsuit has been initiated, then a Party asserting a Paragraph 5 Dispute shall file a noticed motion with that Court seeking a judicial resolution of the Paragraph 5 Dispute (which motion if filed by the Company can be entitled "motion to compel individual arbitration"). In the event neither Party has initiated a lawsuit at the time a Paragraph 5 Dispute arises, either Party may file a complaint in a trial court of competent jurisdiction located in the State of Utah or the Employee's state of residence while employed by the Company that: (i) shall be filed as a stand-alone action separate from any other lawsuit, arbitration or other proceeding so as to be subject to a separate final judgment, and (ii) shall be limited to a request for declaratory relief and/or specific performance resolving a Paragraph 5 Dispute. In the event of a Paragraph 5 Dispute, arbitration shall not commence (or, if already commenced, shall be automatically stayed) until such dispute has been finally resolved, including any appeals.

6. **Administrative Agencies** This Agreement does not preclude Employee from filing an administrative claim or charge with the EEOC and/or state and local human rights agencies to investigate alleged violations of laws enforced by the EEOC or those agencies. By responding to administrative agencies, the Company does not waive its right to enforce this Agreement and the arbitrator shall treat a decision of an administrative agency in the same manner as it would be treated by a court of law.

7. **Rules Governing Arbitration** Arbitration under this Agreement shall be conducted before a single neutral arbitrator of the American Arbitration Association (AAA) in accordance with, and selected pursuant to, the rules and procedures of the Employment Arbitration Rules of the AAA ("the Employment Rules"). If there is a conflict between this Agreement and the Employment Rules, this Agreement shall govern. If there is a conflict between the law of the State of Utah (or applicable federal law) and the Employment Rules and/or this Agreement, the applicable law will govern. Information about AAA is available from its website www.adr.org. A Party may contact AAA directly at 1-800-778-7879.

8. **Limitations on the Authority of Arbitrator** The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between: (i) the Employee and the Company; and (ii) the Employee and any current or former officers, directors, shareholders, employees and agents, if the claim or claims at issue arise out of conduct within the scope of employment. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. By agreeing to arbitrate their Covered Claims through the

AAA, the Parties intend that the AAA shall only have authority to administer individual, bilateral arbitration of Covered Claims. The parties' designation of the AAA as their dispute resolution service is not intended, and shall not be construed, to (1) authorize the AAA to conduct any class, collective, consolidated, representative or joint proceeding or (2) adopt or authorize the use of any AAA rule or procedure for class, collective, representative or joint arbitration, whether under current AAA rules or any future AAA rules that may hereafter be adopted.

9. **Initiating Arbitration**

   (a) To initiate arbitration, a Party must send a written demand for arbitration to any office of the AAA (or if another mutually acceptable arbitrator has been agreed to by the Parties, to the offices of such other arbitrator). The Party submitting the demand for arbitration must also simultaneously send a copy of the written demand for arbitration to the other Party (if being sent to the Company, the copy should be sent to the following address: C.R. England Legal Department, 4701 West 2100 South, Salt Lake City, Utah 84120).

   (b) Both of the following must be included in the demand for arbitration:

      (1) A statement of the nature of the dispute, including the alleged act or omission at issue, the names of the parties involved in the dispute, the amount in controversy, if any, the remedy sought to resolve the issue (including the dollar amount, if any), the mailing address for future correspondence and the legal counsel, if any; and

      (2) Any required filing fee. If a Covered Claim is filed by Employee, the filing fee is $200 payable by check, money order or any other method of payment permitted by the AAA (or another mutually acceptable arbitrator agreed to by the parties). In the event the filing fee required by the state or federal court in which the Covered Claim could have been brought is less than $200, the Company agrees to pay to Employee the difference between $200 and such state or federal court filing fee within 30 days of receiving notice of payment and demand for refund explaining the basis therefor. Any demand received by the AAA (or another mutually acceptable arbitrator agreed to by the Parties) that is not accompanied by the required filing fee will be returned.

   (c) Nothing in this Agreement releases a Party from any obligation to comply with timely filing requirements and statutes of limitations under applicable law, statutes, or regulations. Thus, whether or not a Party chooses to file with administrative agencies, the arbitration must still be initiated within the applicable administrative, statutory or judicial filing time frame, as required by law, and the demand for arbitration must be received at the address above within the time period allowed pursuant to the statute, regulation or other law applicable to the alleged act or omission giving rise to the dispute. Nothing in this Agreement is intended or should be construed to shorten or extend the statute(s) of limitations and/or filing periods that exist under applicable law.

   (d) The submission and timing of any response to an arbitration demand shall be governed by the AAA's Employment Rules.

10. **Arbitration Proceedings**

   (a) **Place**   Arbitration under this Agreement will occur in the state where the Employee is employed or was most recently employed by the Company, unless otherwise agreed by the Parties. If the Employee is a driver, the case will be arbitrated in his or her state of residence for the driver's convenience, notwithstanding the fact that all drivers of the Company are Utah employees. In addition, notwithstanding the venue of the arbitration, Utah law shall apply, as set forth in Paragraph 4, above.

   (b) **Scheduling the Hearing**   The arbitrator will conduct the hearing as expeditiously as possible, while ensuring that all Parties have the opportunity to present evidence and arguments and ensuring that the Agreement is followed. The arbitrator will set the date, time, and place of the hearing, and AAA (or other arbitration provider mutually agreed to by the parties) will notify the Parties at least 30 calendar days in advance, unless the Parties otherwise agree. In the event the hearing cannot reasonably be completed in one day, the arbitrator will schedule the hearing to be continued on a date or dates that is/are convenient to both Parties. The arbitrator will make every effort to select a reasonably convenient location for the continued arbitration, without incurring additional expense, if possible.

   (c) **Fees**   All ordinary and reasonable administrative expenses of the arbitration, including fees for a single arbitrator, hearing room expenses, travel expenses of the arbitrator, and any witnesses produced at the arbitrator's specific request and not otherwise called by a party, will be paid completely by the Company. The fees and expenses of any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law. The Company will not pay for fees or costs

incurred as a result of deliberate and inappropriate delay or absence caused by employees or their counsel, as determined by the arbitrator and permitted by applicable law. Except as otherwise provided by law, each Party shall pay its own attorney's fees and costs. Nothing in this Agreement is intended or should be construed to require employees to bear any type of expense that they would not otherwise bear if the Parties were to litigate a Covered Claim in a court of law.

(d) **Legal Representation and Language Interpreter**   The Parties (if desired) may use the services of legal counsel and/or a language interpreter. The Parties utilizing such services are responsible for making and paying all fees and other arrangements directly with the legal counsel and/or interpreter, subject to applicable law. Nothing in this Agreement is intended or should be construed to require employees to bear any type of expense that they would not otherwise bear if the Parties were to litigate a Covered Claim in a court of law.

(e) **Attendance at and Confidentiality of Arbitration Hearing**   The Covered Party, a Company corporate representative of the Company's choosing, and the arbitrator must be present at the hearing. In addition, an official recorder and legal counsel (for any party) also may attend the hearing. Further, the Parties may call witnesses to testify at the arbitration. Unless the Parties agree otherwise, the arbitrator shall exclude witnesses (other than the represented Parties) from the hearing during the testimony of any other witness. The arbitrator, the Parties and their representatives must maintain the confidentiality of the hearings unless the law provides otherwise.

(f) **Discovery**   Discovery requests and the provision of discovery must be consistent with this Agreement, general standards of due process, the Employment Rules of the AAA and the expedited nature of arbitration. The guidelines below are only guidelines, do not establish a maximum of discovery, and will be applied subject to these principles. Thus, there may be cases which warrant more discovery than that outlined below.

(1) At least 30 days before the arbitration hearing, the Parties must submit the names and addresses of the witnesses each party intends to produce and any documents each Party intends to present. The Parties may add to such information up to 20 days before the hearing. All such submissions are final after that point absent a finding of good cause by the arbitrator.

(2) In general, the Parties may take the depositions of all expert witnesses and up to 3 other individuals. Any individual who certifies he/she has no direct knowledge of the facts should not be deposed as a fact witness. At least 10 days prior notice should be given by the Party requesting a deposition and advance efforts should be made to mutually agree on deposition dates, including the time and place for any depositions to be taken. The Party requesting the deposition is responsible for all related costs for that deposition. Discovery must be completed at least 40 days before the hearing. The arbitrator may alter the timing and scope of discovery as necessary or upon request of the Parties.

(3) The arbitrator will resolve discovery disputes and may expand or restrict the scope of discovery within his or her reasonable discretion and the Employment Rules of AAA consistent with the expedited nature of arbitration.

In the event the foregoing limitations on discovery are found to be invalid or unenforceable for any reason, the Parties agree that this subparagraph (f) may be severed from the Agreement and that a court or arbitrator may order such further and additional discovery as may be necessary or otherwise required by law.

(g) **Pre-hearing Motions**   The arbitrator is authorized to consider and rule on pre-hearing motions, including discovery motions, motions to dismiss and summary judgment on the claims, provided that the other party has reasonable notice and time to respond to any such pre-hearing motions. Any cause of action that fails to state a claim upon which relief may be granted under applicable law (including, but not limited to claims that are barred by the applicable statute of limitations or mandated time frame for filing such claim, or that are barred by an enforceable release, or involve a claim against someone who was not associated with the conduct at issue) is subject to dismissal without a hearing. Any ruling regarding a motion to dismiss such a claim shall be made consistent with the *Form of Decision* and *Scope of Relief* sections in this Agreement.

(h) **Time of Decision**   The arbitrator will make the decision within 30 days of the close of the hearing or as soon as possible thereafter, unless otherwise agreed to by the Parties or otherwise specified by law.

(i) **Form of Decision**   The decision will be in writing and signed by the arbitrator. Unless otherwise agreed to by the Parties, the decision will include a summary of claims arbitrated and decided, a reasoned opinion setting forth any findings of fact or conclusions of law, and damages and other relief (if any) granted. All decisions shall be executed in the manner required by law. The decision will be final and binding upon the Parties, and appeal of the decision to

a court shall be limited as provided by the FAA.

(j) **Scope of Relief**   The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, including the award of monetary damages and the imposition of requirements on the Parties (including injunctive relief), as permitted by applicable law. The arbitrator may award only such relief as may be granted for a Covered Claim brought in court on an individual basis under applicable law. The arbitrator may award punitive or exemplary damages or attorney's fees as provided or limited by applicable law. Nothing in this Agreement is intended or should be construed to limit the remedies that otherwise would be available to the Parties in a court of law.

(k) **Enforcement of Arbitration Decision/Judicial Procedure**   The arbitrator's award may be confirmed as a judgment and enforced in any manner provided by law. If a court determines that the decision is not completely enforceable, it will be enforced and binding on both parties to the maximum extent permitted by law.

11. **Severability**   If any part of this Agreement is held to be void or unenforceable, the remainder of the Agreement will be enforceable and any part may be severed from the remainder as appropriate, to the extent permitted by law. For example, if a court determines that a particular provision of this Agreement is in conflict with a mandatory provision of applicable law in that jurisdiction (notwithstanding the Parties' agreement that Utah law shall apply), such provision(s) will not be enforced in that jurisdiction, but the exclusivity of the Agreement and its use of arbitration as the sole and exclusive forum for all Covered Claims within its scope shall not be affected. Any dispute as to the arbitrability of a particular issue or claim pursuant to this Agreement is to be resolved in arbitration. Notwithstanding the foregoing, any issue concerning the validity of the class, collective, consolidated, representative or joint action waivers provided in Paragraph 5 of this Agreement must be decided by a court with jurisdiction over the Parties, and an arbitrator does not have authority to consider the issue of the validity of any aspect of the waivers. If for any reason one or more of the various waivers set forth in Paragraph 5 is found to be unenforceable by a court, any claims affected by the particular type of waiver that is invalidated (whether it is the class action waiver, collective action waiver, consolidated action waiver, representative action waiver, or joint action waiver) shall be adjudicated entirely and exclusively in court and may not be arbitrated under this Agreement.  Nevertheless, any and all waivers that are not invalidated shall remain enforceable, and any claims affected thereby shall continue to be subject to individual arbitration under this Agreement.

12. **No Modification of At-Will Status**   This Agreement does not alter the voluntary ("at will") nature of the Employee's employment relationship with the Company, nor does it afford any rights or remedies not otherwise available under applicable law. This Agreement does not require that the Company to initiate arbitration before taking corrective action of any kind, including termination of employment.

Agree to arbitrate? *

No

By clicking Yes above, I acknowledge that (1) I have carefully read the mutual agreement to arbitrate; (2) I have been given the opportunity to review this agreement with my private legal counsel; and (3) I have availed myself of that opportunity to the extent I wish to do so.

By clicking No above, I acknowledge that I have reviewed but do not agree to the provisions set forth in this agreement.

## Employee

By signing below, I acknowledge my decision: that I have agreed, or that I have reviewed but do not agree, to the provisions of this agreement and to be bound by it.

I understand that I have the right to decline the opportunity to participate in mutual arbitration and to reject this agreement if I so choose, without affecting my eligibility for employment by the company. I also understand that I may revoke my consent to this agreement by providing written notice of such revocation to the company at the following address: C.R. England, Inc., Attn: Human Resources, PO Box 27728, Salt Lake City, UT 84127-0728 or fax (801) 886-4513, within 30 calendar days of the date I sign this agreement, without respect to the date the company signed the agreement. I may contact the human resources department at (800) 322-0370 with any questions.

NAME James B. Carter Jr.

APPLICATION ID 2889594

**C.R. England, Inc.**

DATE   06/19/2017

BY _____

Jeffrey Knight, Director of Schools

ITS  Authorized Representative of This School

Date: 06/05/2017
IP Address: 107.77.245.11

Legal signature:

©2017 C.R. England, 4701 W 2100 S, Salt Lake City, UT 84120, United States. All Rights Reserved. ©2017 C.R. England, 4701 W 2100 S, Salt Lake City, UT 84120, United States. All rights reserved.