## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| JAMES B. CARTER, JR., individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>C.R. ENGLAND, INC.<br><br>    Defendant. | Case No. 6:20-cv-01108 |

## CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT C.R. ENGLAND, INC.'S MOTION TO TRANSFER VENUE (ECF NO. 37) MOTION TO COMPEL ARBITRATION (ECF NO. 38)

Plaintiff James B. Carter, Jr. ("Plaintiff" or "Carter") files this Consolidated Memorandum of Points and Authorities in Opposition to Defendant C.R. England, Inc.'s ("Defendant" or "CRE") Motion to Transfer Venue (ECF No. 37) and Motion to Compel Arbitration (ECF No. 38, the "MCA".)

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENTS AND AUTHORITY ......................................................................3

    A.    Relevant Legal Standards. ........................................................................3

         1.    The Court, Not an Arbitrator, Determines Whether Parties Validly Form an Arbitration Agreement. ...................................................3

         2.    Even the Presence of Binding Arbitration Agreements Does Not Preclude Conditional Certification Under the FLSA. ..................5

    B.    Defendant Has Waived Its Chosen Forum Through Delay. ....................7

    C.    As in *O'Shaughnessy v. Young Living Essential Oils, L.C.*, Conflicting Provisions in the Driver Education and Employment Contract Reveal There Was No Meeting of the Minds Between Plaintiff and CRE Regarding Arbitration. ...............................................................................................9

         1.    It Is Immaterial that Carter Signed the Arbitration Agreement in this Case Whereas O'Shaughnessy Did Not – the Fifth Circuit Does Not Require that Arbitration Agreements Be Signed to be Enforceable. .........11

         2.    Section 12 of the Driver Education and Employment Contract Does Not Contain an Enforceable Arbitration Carve-Out, Only Ambiguity that Must Be Construed Against the Drafter – CRE. .............12

         3.    The Arbitration Agreement Is Not a Modification of the Driver Education and Employment Contract, Which Was Incorporated by References as in *O'Shaughnessy*. ............................................................15

    D.    The Presence of a Challenged Arbitration Agreement Is No Bar to Conditional Certification. ....................................................................16

III.  CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Adam v. Saenger,*
  303 U.S. 59, 58 S.Ct. 454 (1938) ............................................................... 8

*Astarita v. Menard, Inc.,*
  No. 5:17-06151-CV-RK, 2020 WL 591509 (W.D. Mo. Feb. 6, 2020) .................... 18

*Bellman v. i3Carbon, L.L.C.,*
  563 F. App'x 608 (10th Cir. 2014) ........................................................... 11

*Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.,*
  181 F.3d 435 (3d Cir. 1999) ..................................................................... 8

*Bigger v. Facebook, Inc.,*
  947 F.3d 1043 (7th Cir. 2020) ................................................................ 18

*Blansett v. Continental Airlines, Inc.,*
  203 F. Supp. 2d 736 (S.D. Tex. 2002) ....................................................... 7

*Bowles v. OneMain Fin. Grp., L.L.C.,*
  954 F.3d 722 (5th Cir. 2020) ................................................................... 4

*CompuCredit Corp. v. Greenwood,*
  565 U.S. 95 (2012) ................................................................................ 4

*Conde v. Open Door Mktg., LLC,*
  223 F. Supp. 3d 949 (N.D. Cal. 2017) ................................................... 5, 16

*D'Antuono v. C & G of Groton, Inc.,*
  No. 3:11cv33 (MRK), 2011 WL 5878045 (D. Conn. Nov. 23, 2011) ............... 5, 16

*Darrow v. InGenesis Inc.,*
  No. SA-20-CV-00530-XR, 2020 WL 3620430 (W.D. Tex. July 2, 2020) ........ 13, 14

*Dumais v. Am. Golf Corp.,*
  299 F.3d 1219 (10th Cir. 2002) ......................................................... 5, 14, 15

*Ellsworth v. Am. Arbitration Assoc.,*
  148 P.3d 983 (Utah 2006) ...................................................................... 11

*Gathman-Landini v. Lululemon USA Inc.,*
  No. CV 15-6867 (JMA) (AYS), 2018 WL 3848922 (E.D.N.Y. Aug. 13, 2018) ... 5, 16

*Grayson v. K Mart Corp.,*
  79 F.3d 1086 (11th Cir. 1996) ......................................................... 1, 8, 16

*Gross v. GGNSC Southaven, L.L.C.*,
  817 F.3d 169 (5th Cir. 2016) ............................................................... 3

*Grove v. Meltech, Inc.*,
  No. 8:20CV193, 2020 WL 7133568 (D. Neb. Dec. 3, 2020) ............................................ 6, 18

*Hanover Ins. Co. v. Paint City Contractors, Inc.*,
  299 F. Supp. 2d 554 (E.D. Va. 2004) ..................................................... 7

*Henry v. First Nat'l Bank*,
  444 F.2d 1300 (5th Cir. 1971) ............................................................... 8

*Henry v. First Nat'l Bank*,
  50 F.R.D. 251 (N.D. Miss. 1970) ........................................................... 7

*In re Horseshoe Entm't*,
  337 F.3d 429 (5th Cir. 2003) ............................................................... 7

*In re JPMorgan Chase & Co.*,
  916 F.3d 494 (5th Cir. 2019) ....................................................... *passim*

*In re Spiros Partners, Ltd.*,
  816 Fed. App'x 985 (5th Cir. 2020) ..................................................... 18

*Insurance Corp. of Ireland, Ltd., et al. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ............................................................................ 8

*Kubala v. Supreme Prod. Servs., Inc.*,
  830 F.3d 199 (5th Cir. 2016) ............................................................... 4

*Liberty Nat'l Life Ins. Co. v. Suntrust Bank*,
  No. 2:11-cv-00820-SLB, 2012 WL 3849615 (N.D. Ala. Sept. 5, 2012) ................................... 7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ........................................................................ 5, 14

*McGraw-Edison Co. v. Van Pelt*,
  350 F.2d 361 (8th Cir. 1965) ............................................................... 7

*McKnight v. D. Houston, Inc.*,
  756 F. Supp. 2d 794 (S.D. Tex. 2010) ............................................... 1, 8, 16

*Med. Dev. Corp. v. Indus. Molding Corp.*,
  479 F.2d 345 (10th Cir. 1973) ........................................................... 11

*Metropolitan Life Ins. Co. v. Potter Bank and Trust Co.*,
  135 F. Supp. 645 (W.D. Pa. 1955) ......................................................... 7

*Ortega v. Spearmint Rhino Companies Worldwide, Inc.*,
   No. EDCV 17-206 JGB (KKx), 2019 WL 2871156 (C.D. Cal. May 15, 2019) ........................ 6

*O'Shaughnessy v. Young Living Essential Oils, L.C.*,
   810 Fed. App'x 308 (5th Cir. 2020) ................................................................ *passim*

*PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*,
   260 F.3d 453 (5th Cir. 2001) ........................................................................... 9

*Ralph v. Exxon Mobil Corp.*,
   No. G-05-655, 2006 WL 2266258 (S.D. Tex. Aug. 8, 2006) ................................. 1, 7

*S.E.C. v. Savoy Indus., Inc.*,
   587 F.2d 1149 (D.C. Cir. 1978) ........................................................................ 7

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ......................................................................................... 3

*Summit Contractors, Inc. v. Legacy Corner, LLC*,
   147 F. App'x 798 (10th Cir. 2005) ................................................................... 11

*Thomas v. Papa John's Int'l, Inc.*,
   No. 1:17CV411, 2019 WL 4743637 (S.D. Ohio Sept. 29, 2019) .......................... 5, 16

*Tittle v. Enron Corp.*,
   463 F.3d 410 (5th Cir. 2006) ............................................................................ 3

*Vallone v. CJS Sols. Grp, LLC*,
   No. 19-1532 (PAM/DTS), 2020 WL 568889 (D. Minn. Feb. 5, 2020) ................... 19

*Volt Info. Scis. v. Bd. of Trs.*,
   489 U.S. 468 (1989) ......................................................................................... 3

*Will-Drill Res., Inc. v. Samson Res. Co.*,
   352 F.3d 211 (5th Cir. 2003) ............................................................................ 4

**Statutes**

9 U.S.C. §§ 1-16 ............................................................................................... 3

28 U.S.C. § 1404 .............................................................................................. 7

29 U.S.C. § 256(b) ................................................................................... 1, 8, 16

iv

**Rules**

Fed. R. Civ. P. 12(b) ..................................................................................................................... 1

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1344 (3d ed. 2020) ......................................................................................................................................... 1

15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3844 (4th ed. 2020) ......................................................................................................................................... 7

## I.     INTRODUCTION

Defendant has failed to act with reasonable promptness in seeking to transfer venue in this case, and so its Motion to Transfer Venue (ECF No. 37) should be denied. The case has pended before this Court since August 25, 2020, and the claims of the putative collective action members are wasting with each day that passes that conditional certification of the FLSA collective action is not granted. *See* 29 U.S.C. § 256(b). *See also, e.g.*, *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)). Furthermore, Defendant consented to this Court's jurisdiction and venue when it sought relief from the Court in its Motion for an Order Prohibiting and Remedying Misleading Communications by Plaintiff's Counsel to Putative Class Members (ECF No. 10, the "Emergency Motion"), which was denied by the Court on October 26, 2020 (ECF No. 33). Although counsel for Defendant claimed it was "specially appearing" in connection with that Motion, there is no provision for a "special appearance" in federal court. *See generally* Fed. R. Civ. P. 12(b); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1344 (3d ed. 2020). Instead, waiver of a motion to transfer venue is governed by the delay in time between the filing of the case and the filing of the motion to transfer venue. *See, e.g.*, *Ralph v. Exxon Mobil Corp.*, No. G-05-655, 2006 WL 2266258, at *4, n.3 (S.D. Tex. Aug. 8, 2006) (delay of six months after case filed justified denial of motion to transfer venue despite the facts of the case favoring transfer). Here, Counsel for Defendant had knowledge of this case since on or before September 8, 2020 (*See* ECF No. 10-4, p. 2, ¶¶ 4, 5), but aggressively pursued a failed Emergency Motion against Counsel for Plaintiff, and only when the result was not to its liking did Defendant seek to transfer venue.

1

Not only has Defendant sought injunctive relief from this Court against Plaintiff's counsel (*See* ECF No. 10), it now seeks an order compelling Plaintiff to arbitration further warranting denial of Defendant's Motion to Transfer Venue due to waiver. Defendant's Motion to Compel Arbitration (ECF No. 38, the "MCA") fails because the purported arbitration agreement does not establish a meeting of the minds. The agreement calls for litigation to occur in court in Utah, yet also for arbitration. (*See* ECF No. 38-2, p. 7 ("[A]ny claim, litigation or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Salt Lake City, Utah.").) In *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 Fed. App'x 308, 314 (5th Cir. 2020), the Fifth Circuit recently affirmed a district court's determination that a nearly identical contract did not create an obligation to arbitrate where it called for both litigation and arbitration because "the two provisions irreconcilably conflict." Defendant knows that its arbitration agreement must fail, and so contemporaneously seeks transfer under the forum-selection clause, which it admits is "mandatory" in its Motion to Transfer Venue. (ECF No. 37-1.) Defendant cannot have it both ways – it cannot be the case that the proper forum for this case is both in federal court in Salt Lake City *and* in arbitration.

Furthermore, the MCA is premature, as Plaintiff's pending Motion for Conditional Certification (ECF No. 41) should be considered first. Courts nationwide hold that whether a plaintiff's claims are subject to arbitration is not a bar to conditional certification. This makes sense because arbitration is a merits-based concern that does not affect whether a plaintiff is similarly situated to other current and former employees in terms of their job duties and method of pay – which is the relevant inquiry at this stage. Critically, *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) does not forbid courts from conditionally certifying collective actions simply because a defendant files a motion to compel arbitration. Rather, it narrowly holds that where a

2

plaintiff does not dispute the validity of an arbitration agreement as to *all* putative collective action members, notice should not issue. *Id.* at 498 ("[. . .] plaintiffs represented that they did not intend to contest the validity or enforceability of those agreements"). Here, Plaintiff disputes the validity of the arbitration agreement and reserves the right to challenge any other arbitration agreements as to any opt-in plaintiff or putative collective action member (which Defendant has not submitted to Plaintiff or the Court). As a result, the Court should not delay in ordering notice of this lawsuit to issue to all similarly situated truck driver employees of CRE, whose potential damages dwindle with each day that passes before notice issues, and defer the issue of arbitration to the second stage of the certification analysis.

## II.    ARGUMENTS AND AUTHORITY

**A.    Relevant Legal Standards.**

### 1.    The Court, Not an Arbitrator, Determines Whether Parties Validly Form an Arbitration Agreement.

Arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1-16, the "FAA") is a matter of consent, not coercion. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). In ruling on a motion to compel arbitration, a court must first determine whether the parties agreed to arbitrate the dispute at issue. *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989). Answering this question requires a court to consider first whether there exists a **validly formed** agreement to arbitrate between the parties, and second whether the dispute in question falls within the scope of that agreement. *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016) (citing *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006)).

Although scope may be delegated to the arbitrator,[1] validity is a threshold question for the court to consider. *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 726 (5th Cir. 2020) ("If the *existence* of an arbitration contract between parties is challenged, the challenge is always for the courts to decide."). An objection to mutual assent ("meeting of the minds") is a validity issue. *See, e.g.*, *id.* at 726 ("First, [the employee] says that there was no meeting of the minds because she did not intend to agree to arbitrate employment-related disputes. The district court found that this challenge goes to the formation of the Arbitration Agreement and is therefore to be decided by the courts. We agree.") (applying Mississippi state contract law); *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 Fed. App'x 308, 314 (5th Cir. 2020) ("Utah law provides that '[t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration. [. . .].' ").

The federal policy favoring arbitration does not apply to the determination of the validity of an agreement to arbitrate. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) ("Although there is a strong federal policy favoring arbitration, 'this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties. 'Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to

---

[1]     *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) ("Thus, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated.").

determine the scope of the agreement.' In determining whether an agreement to arbitrate exists, we apply 'ordinary contract principles.' " (internal citations omitted)).

As its proponent, Defendant bears the burden of demonstrating the validity of an arbitration agreement. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019) ("[I]f there is a genuine dispute as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee.") Any ambiguities contained in a contract must be construed against the party who drafted the contract, in this case, Defendant. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Dumais v. Am. Golf Corp.*, 299 F.3d 1219, 1220 (10th Cir. 2002).

## 2. Even the Presence of Binding Arbitration Agreements Does Not Preclude Conditional Certification Under the FLSA.

In general, whether or not an FLSA plaintiff has signed an arbitration agreement does not preclude preliminary certification of a collective action. *See, e.g.*, *Thomas v. Papa John's Int'l, Inc.*, No. 1:17CV411, 2019 WL 4743637, at *3 (S.D. Ohio Sept. 29, 2019); *Gathman-Landini v. Lululemon USA Inc.*, No. CV 15-6867 (JMA) (AYS), 2018 WL 3848922, at *11 (E.D.N.Y. Aug. 13, 2018); *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 969 (N.D. Cal. 2017); *D'Antuono v. C & G of Groton, Inc.*, No. 3:11cv33 (MRK), 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011).

For instance, in *Ortega v. Spearmint Rhino Companies Worldwide, Inc.*, one court held:

> Generally, the fact that a FLSA plaintiff has signed an arbitration agreement will not preclude preliminary certification of a collective action. [. . .] Because the existence of an arbitration agreement 'goes to the Defendants' defenses, not the common policy,' the enforceability of arbitration agreements 'is better reserved for the step two determination, not step one.'

*Ortega v. Spearmint Rhino Companies Worldwide, Inc.*, No. EDCV 17-206 JGB (KKx), 2019 WL 2871156, at *5 (C.D. Cal. May 15, 2019).

As discussed further below, the Fifth Circuit has not precluded courts from issuing notice to putative collective action members even though lead plaintiffs signed arbitration agreements. Instead, in *In re JPMorgan Chase & Co.*,[2] the Fifth Circuit puts the burden on the employer seeking to avoid a collective action to show by a preponderance of the evidence that notice should not issue to each particular employee it seeks to exclude due to a valid and enforceable arbitration agreement. *See Grove v. Meltech, Inc.*, No. 8:20CV193, 2020 WL 7133568, at *4 (D. Neb. Dec. 3, 2020). The court in *Grove* recognized that "even post *In re JPMorgan Chase* and *Bigger*, [courts] have granted conditional certification providing notice to potential collective members and deferred the merits-based question of whether the arbitration agreements are valid and enforceable to the second stage." *Id.* (collecting cases). Indeed, an employer must establish the existence of a valid, applicable, arbitration agreement <u>for each worker</u> it seeks to exclude from notice (and must do so prior to a determination on the notice issue). *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 503 (5th Cir. 2019). "[T]he party that intends to rely on arbitration instead of a collective action 'must show that the agreement meets all of the requisite contract elements.'" *Id.* at 502. And "if there is a genuine dispute as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee." *Id.* at 502-03. **"[I]f the employer fails to establish the existence of a valid arbitration agreement as to an employee, that employee would receive the same notice as others."** *Id.* at 503 (emphasis added).

---

[2]   916 F.3d 494 (5th Cir. 2019).

6

**B.      Defendant Has Waived Its Chosen Forum Through Delay.**

Although 28 U.S.C. § 1404 has set no limit on the time when a motion to transfer must be made, "it is common sense that the party seeking a change of venue should act with reasonable promptness and that delay may cause the district court to refuse a transfer that otherwise would have been granted had it been sought earlier." 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3844 (4th ed. 2020). Sometimes the appropriate time to file for transfer is before service of process is completed. *See, e.g.*, *Liberty Nat'l Life Ins. Co. v. Suntrust Bank*, No. 2:11-cv-00820-SLB, 2012 WL 3849615, at *3 (N.D. Ala. Sept. 5, 2012) ("lack of service is no impediment to the current motion to transfer venue" (quoting *Hanover Ins. Co. v. Paint City Contractors, Inc.*, 299 F. Supp. 2d 554, 556 n.1 (E.D. Va. 2004))). Courts have justified denial of a motion to transfer venue, amongst other reasons, on the basis of delay. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("We recognize that in rare and special circumstances a factor of "delay" or of "prejudice" might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence"). *See also, e.g.*, *Blansett v. Continental Airlines, Inc.*, 203 F. Supp. 2d 736, 743 (S.D. Tex. 2002) ("In addition, it should not be overlooked that a transfer to Houston will inevitably result in Plaintiffs losing significant time in having their claims resolved since this case [. . .] would go to "the end of the line" in any transferee court [. . .]."); *Ralph v. Exxon Mobil Corp.*, No. G-05-655, 2006 WL 2266258, at *4 (S.D. Tex. Aug. 8, 2006). Courts have also justified denial of a motion to transfer venue *solely* on the basis of delay. *See, e.g.*, *McGraw-Edison Co. v. Van Pelt*, 350 F.2d 361, 364 (8th Cir. 1965) (en banc); *Metropolitan Life Ins. Co. v. Potter Bank and Trust Co.*, 135 F. Supp. 645, 646 (W.D. Pa. 1955). *See also S.E.C. v. Savoy Indus., Inc.*, 587 F.2d 1149, 1156 (D.C. Cir. 1978); *Henry v. First Nat'l Bank*, 50 F.R.D. 251 (N.D. Miss. 1970) (transfer motion, filed three months after the

filing of the original complaint, was denied because several motions and preliminary injunction had already been decided), *vacated on other grounds by* 444 F.2d 1300 (5th Cir. 1971).

Here, Defendant sought relief from the Court in the form of its Emergency Motion and its MCA, and a motion for extension of time to respond to Plaintiff's Complaint of twenty-one days (ECF No. 34), which motions have delayed the case. "The actions of [a] defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Insurance Corp. of Ireland, Ltd., et al. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982). In particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter. *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) (citing *Adam v. Saenger*, 303 U.S. 59, 58 S.Ct. 454 (1938)). Defendant through its litigation conduct seeking significant relief from this Court has clearly waived its right to seek to transfer the case now, only after it has received an unfavorable order with regard to its Emergency Motion. Furthermore, the risk of delay is particularly acute in FLSA cases due to the operation of the statute of limitations. *See* 29 U.S.C. § 256(b). The statute of limitations is not tolled when the case is filed, or even while a court considers whether to grant conditional certification. *See, e.g.*, *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)). Consequently, this case presents one of those "special circumstances' where delay is a relevant consideration, especially here where delay has been a direct result of Defendant seeking relief from the Court.

Transferring this case to Utah will create additional delay which will prejudice Plaintiff's request for notice to issue in this case. Defendant clearly intends to have its cake and eat it too, by seeking to enforce a mandatory forum selection clause while paradoxically continuing to insist

that the case should be arbitrated, and the Utah court's consideration of the arbitration (non)issue

will create further delay. However, Defendant's litigation conduct makes clear that neither relief

requested is merited – transfer is not merited because Defendant has consented to this Court's

jurisdiction and venue by seeking relief through its Emergency Motion and MCA;[3] *and* arbitration

is not merited because of the mandatory forum selection clause which provides that a court (not

an arbitrator) should hear Plaintiff's claims.

C.     **As in *O'Shaughnessy v. Young Living Essential Oils, L.C.*, Conflicting Provisions in the Driver Education and Employment Contract Reveal There Was No Meeting of the Minds Between Plaintiff and CRE Regarding Arbitration.**

In April of 2020, the Fifth Circuit was confronted with a fact pattern that is nearly identical

to the one posed in this case. *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 Fed. App'x

308, 314 (5th Cir. 2020). There, the plaintiff joined a company by signing a member agreement

online. *Id.* at 309. That member agreement, like the Driver Education and Employment Contract

in this case, was to be governed by the laws of Utah (*i.e.*, Tenth Circuit caselaw). *Id.*

Here, Section 10 of the Driver Education and Employment Contract drafted by Defendant

contains a merger clause:

> Entire Agreement. This Contract, together with the Enrollment Agreement and the Tuition Note, contains the entire agreement and understanding by and between C.R. England and you with respect to the subject matter contained herein and no representations, promises, agreements, or understandings, written or oral, concerning this subject matter, shall be of any force or effect. This Contract may not be modified except by a writing signed by both you and C.R. England. [. . .]

(*See* ECF No. 38-2, p. 7.) This provision is almost identical to the merger clause in *O'Shaughnessy*:

> This Agreement, which may be amended from time to time, constitutes the entire agreement between you and Young Living and supersedes all prior agreements, and no other promises, representations, guarantees, or agreements of any kind will be

---

[3]     A "party may waive any jurisdictional objections if its conduct does not reflect a continuing objection to the power of the court to act over the defendant's person." *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 460-61 (5th Cir. 2001).

valid unless in writing and is signed by both parties. Only an instrument in writing signed by all parties may modify this Agreement unless otherwise provided for in this Agreement.

(*See* Ex. 1 – *O'Shaughnessy* Dkt. No. 10, p. 3.)

At Section 12, Defendant's Driver Education and Employment Contract provides:

Governing Law and Venue. You and C.R. England agree that this Contract and its construction and interpretation shall be governed by the laws of the State of Utah, and **any claim, litigation or dispute arising from or related to this Contract <u>shall</u> be litigated in the appropriate federal or state court located in Salt Lake City, Utah.** You hereby consent to personal jurisdiction and venue in such court. [. . .]

(*See* ECF No. 38-2, p. 7 (emphasis added).) This provision is almost identical to the forum selection clause in the member agreement *O'Shaughnessy*:

This Agreement will be interpreted and construed in accordance with the laws of the State of Utah applicable to contracts to be performed therein. Any legal action concerning the Agreement will be brought in the state and federal courts located in Salt Lake City, Utah. [. . .]

(*See* Ex. 1 – *O'Shaughnessy* Dkt. No. 10, p. 3.)

Like the member agreement in *O'Shaughnessy*, the Driver Education and Employment Contract incorporated by reference an arbitration agreement. *Compare O'Shaughnessy*, 810 Fed. App'x at 309 *with* (ECF No. 38-2, p. 7).

In *O'Shaughnessy*, the Fifth Circuit held that the arbitration agreement incorporated by reference into the member agreement directly conflicted with the forum selection clause in the member agreement. 810 Fed. App'x at 312. It also held that because the member agreement contained a merger clause, the forum selection clause in the member agreement superseded the arbitration agreement. *Id.*

The Fifth Circuit considered the following two Tenth Circuit cases in support of its holding:

In *Bellman v. i3Carbon, L.L.C.*, 563 F. App'x 608 (10th Cir. 2014), there were conflicting provisions in the Operating Agreement (calling for arbitration) and the Subscription Agreement (calling for litigation in a Denver, Colorado court) between the parties. Because those two documents conflicted, the court held that the defendants seeking to enforce the arbitration agreement failed to carry their burden of demonstrating the existence of an enforceable arbitration agreement because there was no meeting of the minds regarding arbitration. *Id.* at 614-15.

Likewise, in *Summit Contractors, Inc. v. Legacy Corner, LLC*, 147 F. App'x 798 (10th Cir. 2005), the Tenth Circuit held that a forum selection clause was "compelling evidence against an intent to arbitrate" despite the fact that the parties had entered into a separate contract requiring arbitration.

1. **It Is Immaterial that Carter Signed the Arbitration Agreement in this Case Whereas O'Shaughnessy Did Not – the Fifth Circuit Does Not Require that Arbitration Agreements Be Signed to be Enforceable.**

Defendant may attempt to distinguish *O'Shaughnessy* from this case because the employee did not sign the arbitration agreement whereas Plaintiff did. *Compare O'Shaughnessy*, 810 Fed. App'x at 309 ("The Agreement incorporates by reference two other documents: (1) the Policies and Procedures ("P&Ps") and (2) the Compensation Plan. O'Shaughnessy was not required to sign either of these online documents. [. . .] The P&Ps [. . .] contain an arbitration clause") *with* (ECF No. 38-2, p. 14). However, neither the FAA nor Utah state law require that arbitration agreements or other contracts be signed to be enforceable. *See Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) (noting that it is "not necessary [. . .] that a party sign the writing containing the arbitration clause"). *Accord Ellsworth v. Am. Arbitration Assoc.*, 148 P.3d 983, 988 (Utah 2006) ("Of course, no signature is required for a person to become party to a contract.").

Indeed, in *O'Shaughnessy*, the Fifth Circuit's discussion of *Bellman* expressly states that the fact that the arbitration clause was not signed by the employee was "not dispositive" to that ruling. *O'Shaughnessy*, 810 Fed. App'x at 312, n.7. Consequently, the decision in *O'Shaughnessy* did not hinge on the fact that the arbitration agreement submitted by the employer was not signed by the employee, and so the fact that Plaintiff did sign the arbitration agreement at issue is not determinative here.

**2.      Section 12 of the Driver Education and Employment Contract Does Not Contain an Enforceable Arbitration Carve-Out, Only Ambiguity that Must Be Construed Against the Drafter – CRE.**

Plaintiff also anticipates that Defendant may attempt to distinguish *O'Shaughnessy* because of the language highlighted below in Section 12 of the Driver Education and Employment Contract:

> Governing Law and Venue. You and C.R. England agree that this Contract and its construction and interpretation shall be governed by the laws of the State of Utah, and any claim, litigation or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Salt Lake City, Utah. You hereby consent to personal jurisdiction and venue in such court. [. . .] **Notwithstanding any other provision of this Contract, if you have executed an arbitration agreement with C.R. England, the terms of the arbitration agreement shall govern any claims or disputes between you and C.R. England arising from or related to this Agreement.**

(*See* ECF No. 38-2, p. 7 (emphasis added).) However, that language merely incorporates by reference the conflicting terms of the Arbitration Agreement (just as in *O'Shaughnessy* the arbitration agreement was incorporated by reference) demonstrating a lack of mutual assent to arbitration. The Fifth Circuit considered similar "carve-out" language in *O'Shaughnessy*,[4] but was

---

[4]    "Notwithstanding the foregoing, nothing in these Policies and Procedures will prevent either party from applying to and obtaining from any court having jurisdiction a writ of attachment, a temporary injunction, preliminary injunction, or other relief available to safeguard and protect its intellectual property rights and/or to enforce its rights under the non-solicitation provision of Section 3.11.1.2."

not persuaded that the forum selection clause was intended only to cover "carved out" claims. 810 Fed. App'x at 314. There, as here, the forum selection language did not state that it was intended only to cover disputes specifically excepted from arbitration. *Id.* At footnote six, the court stated:

> Other paragraphs in the [arbitration agreement] do contain such limiting language so the absence of this language in the [forum selection clause] in the [member agreement] is telling. *See* [arbitration agreement section] 13.2.3 ("Jurisdiction and venue of any matter **not subject to arbitration** will reside in any state or federal court located in Salt Lake City, Utah[.]")

*Id.* at 312 (emphasis added). Even considering the "notwithstanding" language, the Fifth Circuit held that the "carve-out" did not cure the inherent conflict between the arbitration agreement and the forum selection clause.

Most importantly, there is no way to harmonize the two requirements articulated by CRE in the Driver Education and Employment Contract: arbitrate and litigate simultaneously and without limitation. A district court recently interpreted *O'Shaughnessy*, but compelled the plaintiff to arbitration because the forum selection clause could be harmonized with arbitration. *See Darrow v. InGenesis Inc.*, No. SA-20-CV-00530-XR, 2020 WL 3620430, at *5 (W.D. Tex. July 2, 2020). Although *Darrow* applied Texas law, not Utah law, it is instructive. There, the forum selection clause related strictly to enforcement of the arbitration agreement. ("These agreements shall be governed by the laws of the State of Texas…. Any litigation brought by either party involving **the enforcement of** the [arbitration] Agreements or the **rights, duties, or obligations of any party** shall be brought exclusively in the state or federal courts sitting in San Antonio, Bexar County, Texas. [. . .]." (emphasis added)) The court ruled that: "[r]ead together, these agreements make clear that there was 'mutual understanding and assent' that some disputes between the parties, including those related to retaliation, would be subject to arbitration; and that any questions about the **enforcement** of the Arbitration Agreement or the Restrictive Agreements would be brought in

13

federal or state court in Texas." *Id.* (emphasis added). In contrast, there is no language in Section 12 of the Driver Education and Employment Contract stating that the mandatory Salt Lake City, Utah forum applies only to certain claims or causes of action. (*See* ECF No. 38-2, p. 7). Indeed, the scope of the forum selection clause is expansive: "any claim, litigation, or dispute arising from or related to this Contract **shall** be litigated in the appropriate federal or state court located in Salt Lake City, Utah." (*Id.*)

Even if the Court were to reject the clear analysis in *O'Shaughnessy* and *Darrow*, the highlighted language in the Driver Education and Employment Contract creates ambiguity which must be construed against Defendant as the drafter. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Dumais v. Am. Golf Corp.*, 299 F.3d 1219, 1220 (10th Cir. 2002). One possible reading of:

> Notwithstanding **any other provision** of this Contract, if you have executed an arbitration agreement with C.R. England, the terms of the arbitration agreement shall govern any claims or disputes between you and C.R. England arising from or related to this Agreement.

is that the forum selection clause is only triggered if the driver has not signed an arbitration agreement with CRE. However, another fair reading is that despite a conflict in any provision **other than Section 12** of the Driver Education and Employment contract (which contains the forum selection clause) claims should be arbitrated. In that case, the conflict between the forum selection clause and the arbitration agreement remains. Prevailing wisdom is that "the use of *notwithstanding* might result in (unintended) ambiguities"[5] and that "notwithstanding" can "create

---

[5]   Willem Wiggers, *Drafting Contracts*; *(e) 'Notwithstanding…' in contracts*, We Agree Accelerated Contract Drafting, https://weagree.com/drafting-principles/6-typical-drafting-habits-and-legalese/6-1-certain-funny-phrases/e-notwithstanding/ (date of last access: Jan. 3, 2021).

significant confusion because [. . .] it is not clear how far-reaching or how far back [the exception] reaches."[6] Indeed, as Bryan Garner puts it:

> notwithstanding is a formal word used in the sense "despite," "in spite of" or "although." In general English-language contexts, it has experienced a steady decline in use since about 1760. E.g.: "*Notwithstanding* an outpouring of editorial opinion on either side of this issue, there are no easy answers." Richard Baum, "Perspective on China," *L.A. Times*, 30 Nov. 1997, at M5.

> The question that literalists ask is, What doesn't withstand what else? Is the outpouring of opinion "not withstanding" (i.e., subordinated to) the lack of easy answers, or is the lack of easy answers "not withstanding" (subordinated to) the outpouring of editorial opinion?

Bryan A. Garner, *Garner's Modern English Usage* 635 (4th ed. 2016). Consequently, the ambiguity should be construed against Defendant to permit Plaintiff to avoid arbitration. *See Dumais*, 299 F.3d at 1219.

### 3. The Arbitration Agreement Is Not a Modification of the Driver Education and Employment Contract, Which Was Incorporated by References as in *O'Shaughnessy*.

Finally, Defendant may also try to argue that this case differs from *O'Shaughnessy* because the Arbitration Agreement is a modification of the Driver Education and Employment Contract. However, as in *O'Shaughnessy*, the Arbitration Agreement is incorporated by reference in the Driver Education and Employment Contract. *Compare O'Shaughnessy*, 810 Fed. App'x at 309-312 (") *with* (ECF No. 38-2, p. 7). Consequently, the Arbitration Agreement cannot be a modification if it is part of the Driver Education and Employment Contract.

---

[6] Leslie Marell, *"Notwithstanding" = Exceptions to What I Just Said (Can't We Just Say What We Mean?)*, Marell Law Firm, http://marell-lawfirm.com/notwithstanding-exceptions-just-said-cant-just-say-mean/ (Mar. 10, 2015). *Accord* Ken Adams, *A "Notwithstanding" Sideshow*, Adams on Contract Drafting, https://www.adamsdrafting.com/a-notwithstanding-sideshow/ (June 9, 2014) ("MSCD explains as follows how using the word *notwithstanding* in a contract can create problems: [. . .] 'Furthermore, although a *notwithstanding* clause that refers to a particular section at least warns readers what is being undercut, one that encompasses the entire agreement leaves to the reader the often awkward task of determining which provisions are affected.' ").

**D.      The Presence of a Challenged Arbitration Agreement Is No Bar to Conditional Certification.**

Even if the Court determines that the arbitration agreement between Plaintiff and CRE is valid and enforceable, the Court should not delay in issuing notice to putative collective action members pursuant to Plaintiff's Motion for Conditional Certification. (ECF No. 41.) In contrast with Rule 23 class actions, the statute of limitations under the FLSA runs backward from the time an opt-in plaintiff's consent to join is filed. *See* 29 U.S.C. § 256(b). The statute of limitations is not tolled when the case is filed, or even while a court considers whether to grant conditional certification. *See, e.g.*, *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)).

As discussed in Section A.2. of this Memorandum, the presence of purportedly binding arbitration agreements is a merits-based defense best reserved for the second stage of the conditional certification analysis in FLSA cases. *See, e.g.*, *Thomas v. Papa John's Int'l, Inc.*, No. 1:17CV411, 2019 WL 4743637, at *3 (S.D. Ohio Sept. 29, 2019); *Gathman-Landini v. Lululemon USA Inc.*, No. CV 15-6867 (JMA) (AYS), 2018 WL 3848922, at *11 (E.D.N.Y. Aug. 13, 2018); *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 969 (N.D. Cal. 2017); *D'Antuono v. C & G of Groton, Inc.*, No. 3:11cv33 (MRK), 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011).

Furthermore, the presence of <u>one</u> purportedly binding arbitration agreement does not preclude conditional certification as to all. Defendant does not present arbitration agreements for each of the Opt-in Plaintiffs, let alone any of the putative collective action members, nor does Defendant state how many of the Opt-in Plaintiffs or putative collective action members have signed any such arbitration agreements. (*See* ECF No. 38-2 (Declaration of Janis P. Pressley relates only to Plaintiff James Carter).)

16

This case also differs significantly from *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019). There, the plaintiffs represented that they did not intend to contest the validity or enforceability of the arbitration agreements the defendant claimed applied to the majority of the putative class members. *Id.* at 498. Here, in contrast, Plaintiff contests the validity of the single arbitration agreement Defendant presents. Plaintiff has preserved his right to object to the validity and enforceability of the arbitration agreements as to the Opt-in Plaintiffs in this case, and with respect to the putative collective action members, on the grounds presented in this Memorandum and on all other bases depending on the arbitration agreements presented. Even under *In re JPMorgan Chase*, Defendant bears the burden to produce the purportedly valid arbitration agreements for each putative collective action member for whom it wishes to avoid arbitration, which Defendant has not done. *Id.* at 502-03 ("It is only logical to conclude, from this, that if there is a genuine dispute as to the existence or validity of an arbitration agreement, an employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee. The court should permit submission of additional evidence, carefully limited to the disputed facts, at the conditional-certification stage. Where a preponderance of the evidence shows that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification. But if the employer fails to establish the existence of a valid arbitration agreement as to an employee, that employee would receive the same notice as others.").

At bare minimum, Defendant must produce information with respect to which of the putative collective action members are subject to arbitration agreements and produce those arbitration agreements. For instance, in *Bigger v. Facebook*, *Inc.*, the Seventh Circuit required an

employer to prove the existence of a valid arbitration agreement as to each and every putative collective action member before it could avoid sending notice to similarly situated employees. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020) ("The employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement **for each employee it seeks to exclude from receiving notice**." (emphasis added)).

> The Fifth Circuit recently recognized the propriety of such an approach:
>
> Unlike in *JPMorgan*, the district court here did not order notice to be sent to putative collective members. *Id.* at 498. Instead, it determined there was a genuine dispute as to the arbitration agreements' validity and ordered [the employer] to produce the names of the putative members along with their respective ELAs containing the arbitration agreements. The district court did not err by taking this step in deciding which putative members are subject to valid agreements, and thus which putative members will not receive notice.

*In re Spiros Partners, Ltd.*, 816 Fed. App'x 985, 987 (5th Cir. 2020).

As in *Spiros*, Defendant must present Plaintiff's Counsel with each purportedly binding arbitration agreement and contact information for each and every putative Collective Action Member so that Plaintiffs' Counsel can perform due diligence in determining whether any defenses to purportedly applicable arbitration agreements exist. Here, Defendant has not even produced arbitration agreements for all of the pre-conditional certification Opt-in Plaintiffs.

Nonetheless, many courts still refrain from applying *In re JPMorgan Chase* and *Bigger*, opting instead to follow the simpler framework of issuing notice and addressing arbitration in the second stage of the conditional certification process, as a merits-based issue of an employer's defense. *See, e.g.*, *Grove v. Meltech, Inc.*, No. 8:20CV193, 2020 WL 7133568, at *4 (D. Neb. Dec. 3, 2020) (collecting cases); *Astarita v. Menard, Inc.*, No. 5:17-06151-CV-RK, 2020 WL 591509, at *2 (W.D. Mo. Feb. 6, 2020) (refusing to initiate a "schedule" on the issue of arbitration

agreements applicable to certain putative collective action members based on *Bigger* and issuing notice); *Vallone v. CJS Sols. Grp, LLC*, No. 19-1532 (PAM/DTS), 2020 WL 568889, at *4 (D. Minn. Feb. 5, 2020) (refusing to deny conditional certification on the basis that some members of the collective may have been subject to valid arbitration agreements).

## III.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's MCA and retain this case on its docket. Plaintiff requests such other and further relief to which he has shown himself justly entitled.

Dated:  January 4, 2021                    Respectfully submitted,

                                           s/ Melinda Arbuckle
                                           Melinda Arbuckle (admitted *pro hac vice*)
                                           Texas Bar No. 24080773
                                           marbuckle@eeoc.net
                                           Ricardo J. Prieto (admitted *pro hac vice*)
                                           Texas Bar No. 24062947
                                           rprieto@eeoc.net
                                           Shellist Lazarz Slobin LLP
                                           11 Greenway Plaza, Suite 1515
                                           Houston, TX 77046
                                           (713) 621-2277 – Telephone
                                           (713) 621-0993 – Facsimile

                                           s/ Kenneth W. DeJean
                                           Kenneth W. DeJean (La. Bar No. 4817)
                                           Adam R. Credeur (La. Bar No. 35095)
                                           LAW OFFICES OF KENNETH W. DEJEAN
                                           417 W. University Ave.
                                           P.O. Box 4325
                                           Lafayette, LA 70502
                                           Telephone: (337) 235 - 5294
                                           Telecopier: (337) 235 - 1095
                                           kwdejean@kwdejean.com
                                           adam@kwdejean.com
                                           Local Counsel for Plaintiffs

ATTORNEYS FOR PLAINTIFF AND PUTATIVE
COLLECTIVE ACTION MEMBERS