THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JAMES B. CARTER, JR., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>C.R. ENGLAND, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [38] MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DENYING [41] MOTION FOR CONDITIONAL CERTIFICATION**<br><br>Case No. 2:21-cv-00102-DBB<br><br>District Judge David Barlow |

Plaintiff James B. Carter, Jr. ("Carter") brought this action, individually and on behalf of putative class members, alleging minimum wage violations under the Fair Labor Standards Act of 1938. On November 30, 2020, Defendant C.R. England, Inc. ("C.R. England") filed a Motion to Compel Individual Arbitration ("Motion to Compel").[1] Shortly thereafter, Carter filed a Motion for Conditional Certification of FLSA Collective and Issuance of Notice ("Motion to Certify").[2] Having reviewed the parties' briefing,[3] and for good cause appearing, IT IS HEREBY ORDERED that the Motion to Compel is GRANTED. Because Carter's claims are subject to

---

[1] ECF No. 38.
[2] ECF No. 41, filed December 1, 2020.
[3] Carter filed a response in opposition. ECF No. 48, filed January 4, 2021. C.R. England filed a reply memorandum. ECF No. 52, filed January 28, 2021. The parties also submitted filings on a request to submit that argued the relevance of the Louisiana District Court's prior ruling. *See* Request to Submit, ECF No. 68, filed March 4, 2021; Response Regarding Defendant's Request to Submit for Decision, ECF No. 74, filed March 12, 2021; and Defendant's Reply to Plaintiff's Response Regarding Request to Submit for Decision, ECF No. 78, filed March 15, 2021.

individual arbitration, the Court further finds that Carter's Motion to Certify is moot and therefore DENIED. With no further issues remaining, this case will be administratively closed.

## BACKGROUND

On August 25, 2020, Carter initiated this action against his former employer, C.R. England, in the U.S. District Court for the Western District of Louisiana.[4] C.R. England is a Utah corporation headquartered in Salt Lake City, Utah. C.R. England specializes in transporting temperature-sensitive freight and employed Carter as a truck driver.[5] As part of his employment, Carter entered into a Driver Education and Employment Contract ("Employment Contract") and Mutual Arbitration Agreement ("Arbitration Agreement").[6] The Employment Contract included the following Governing Law and Venue provision:

> Any claim, litigation or dispute arising from or related to this contract shall be litigated in the appropriate federal or state court located in Salt Lake City, Utah. . . . Notwithstanding any other provision of this Contract, if you have executed an arbitration agreement with C.R. England, the terms of the arbitration agreement shall govern any claims or disputes between you and C.R. England arising from or related to this Agreement.[7]

The Arbitration Agreement provides that it is to be governed and construed in accordance with the Federal Arbitration Act and/or the laws of the State of Utah including, but not limited to, the Utah Uniform Arbitration Act.[8] Under the Arbitration Agreement, any and all covered claims "shall be submitted to and resolved exclusively by final and binding arbitration[.]"[9] Covered claims include: "all claims or disputes, whether or not arising out of the Employee's

---

[4] ECF No. 1.
[5] ECF No. 38 at 7.
[6] ECF No. 38-2.
[7] ECF No. 38-2, Exhibit 1, ¶12.
[8] ECF No. 38-2, Exhibit 2, ¶4.
[9] *Id.* at ¶1.

2

employment by the Company, that the Company may have against the Employee, or that the Employee may have against the Company" as well as "any claim or dispute of any nature relating to claims of . . . failure to pay wages, bonuses or any other form of compensation . . . or violations of any other common law, federal, state or local statute, ordinance, regulation or public policy, including, but not limited to . . . the Fair Labor Standards Act of 1938."[10]

Pursuant to the forum selection clause in the Employment Contract, C.R. England sought to transfer the case to the District of Utah.[11] The Louisiana District Court granted C.R. England's motion to transfer, finding that C.R. England did not waive its right to contest venue or unreasonably delay seeking transfer.[12] The Louisiana District Court further found that the forum selection clause set forth in the Employment Contract is enforceable and does not conflict with the Arbitration Agreement. However, the Louisiana District Court did not resolve the pending Motion to Compel or Motion to Certify. On February 22, 2021, this case was transferred to the District of Utah.

## STANDARD

Under the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[13] "Although '[t]he Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements,' the question 'whether parties have a valid arbitration agreement at all' is a 'gateway matter' that is 'presumptively for courts to

---

[10] *Id*. at ¶2.
[11] ECF No. 37, filed November 30, 2020.
[12] ECF No. 55, entered February 4, 2021.
[13] 9 U.S.C. § 2.

3

decide.'"[14] In other words, the FAA "does not require parties to arbitrate when they have not agreed to do so."[15]

Therefore, determining whether to compel claims to arbitration is a two-step inquiry. First, the court must determine whether a valid agreement to arbitrate exists; and then, whether the dispute in question falls within the scope of that agreement.[16] "If the arbitration clause is clear, our inquiry is over, but if the arbitration clause is ambiguous about whether it covers the dispute, we apply a rebuttable presumption of arbitrability."[17]

## DISCUSSION

### A. The parties entered into a valid written agreement to arbitrate.

"Whether an agreement to arbitrate exists 'is simply a matter of contract between the parties.'"[18] Accordingly, ordinary contract principles are applied.[19] For a contract to be valid, "there must be a meeting of the minds on the essential terms of the agreement."[20] Carter acknowledges that he entered into the Employment Contract and Arbitration Agreement with C.R. England. However, he contests the validity of the Arbitration Agreement, arguing that there was no meeting of the minds due to ambiguity and conflicts between the Arbitration Agreement and the forum selection clause in the Employment Contract.[21]

The relevant provision of the Employment Contract reads as follows:

---

[14] *Bellman v. i3Carbon, LLC*, 563 Fed. App'x 608, 611 (10th Cir. 2014) (internal citations omitted).
[15] *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989).
[16] *Soc'y of Prof'l Eng'g Emples. in Aero., Local 2001 v. Spirit Aerosystems, Inc.*, 681 Fed. App'x 717, 721 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-301 (2010)).
[17] *Id.*
[18] *Bellman*, 563 Fed. App'x at 608 (quoting *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013)).
[19] *Id.*
[20] *Id.* at 311 (citing *Trans-Western Petroleum, Inc. v. U.S. Gypsum Co.*, 830 F.3d 1171, 1176 (10th Cir. 2016)).
[21] ECF No. 48 at 9-10.

> Any claim, litigation, or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in Salt Lake City, Utah. . . . Notwithstanding any other provision of this Contract, if you have executed an arbitration agreement with C.R. England, the terms of the arbitration agreement shall govern any claims or disputes between you and C.R. England arising from or related to this Agreement.[22]

This provision is plain: any litigation must be brought in Salt Lake City, but if Carter executed an arbitration agreement with C.R. England, then that agreement would govern any claims or disputes instead.

As noted earlier, Carter also executed an Arbitration Agreement with C.R. England, which states: "Any and all Covered Claims . . . shall be submitted to and resolved exclusively by final and binding arbitration in accordance with this Agreement."[23] Among other things, "Covered Claims" include "failure to pay wages, bonuses or any other form of compensation," "wage statement violations," and "violations of any other common law, federal, state, or local statute, [or] ordinance," including "the Fair Labor Standards Act of 1938."[24] In short, Carter's exact claims in this suit are "Covered Claims," which may only be addressed in binding arbitration. Accordingly, the relevant clause from the Employment Contract and the relevant clause in the Arbitration Agreement are both plain and easily reconciled.

Carter labors to find some conflict and ambiguity in these clear provisions, but none exists. Carter argues that the phrase "notwithstanding any other provision of this contract" that precedes the limiting language in the Employment Contract is subject to multiple interpretations and therefore ambiguous.[25] However, alternative interpretations "must be plausible and

---

[22] ECF No. 38-2, Exhibit 1, ¶12.
[23] ECF No. 38-2, Exhibit 2, ¶1.
[24] Id. at ¶2.
[25] ECF No. 48 at 14-15.

reasonable in light of the language used," based upon "the usual and natural meaning of the language used and may not be the result of a forced or strained construction."[26] In short, "words and phrases do not qualify as ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests."[27] Carter's proposed interpretation of the notwithstanding clause is not plausible or reasonable given conventional understanding and use of the words "notwithstanding" and "provision."

Carter's primary legal argument turns on a Fifth Circuit case, *O'Shaughnessy v. Young Living Essential Oils, L.C.*[28] Like the Louisiana District Court, this Court does not find that the *O'Shaughnessy* case supports Carter's position.

In *O'Shaughnessy*, the court, applying Utah contract principles, found that there was no meeting of the minds between the employer and employee with respect to arbitration. There, the employee signed an agreement that contained a forum selection clause.[29] The agreement incorporated by reference a separate document, the Policies and Procedures, which contained an arbitration clause.[30] The agreement did not contain any limiting language indicating that the forum selection clause only applied to disputes not covered by arbitration. "In fact, nowhere in the Agreement [was] the word 'arbitration' even mentioned."[31] As a result, the district court found the Policies and Procedures' arbitration clause to be in total conflict with the agreement's forum selection clause; and therefore, there was no meeting of the minds with respect to

---

[26] *Saleh v. Farmers Ins. Exch.*, 133 P.3d 428,433 (Utah 2006) (internal citations omitted).
[27] *Id*.
[28] 810 Fed. App'x 308 (5th Cir. 2020).
[29] *Id*. at 309.
[30] *Id*.
[31] *Id.* at 314.

6

arbitration.[32] Here, by stark contrast, the Employment Contract explicitly states that the Arbitration Agreement will govern "[n]otwithstanding any other provision of this Contract." *O'Shaughnessy* does not support Carter's claim.

The other two cases relied upon by Carter are also distinguishable. In *Bellman v. i3Carbon, L.L.C.*, the court determined that an enforceable arbitration agreement did not exist between the parties.[33] The only signed documents in the record did not include an arbitration provision.[34] To the contrary, the signed agreement included a forum selection clause *without* any limiting language.[35] Likewise, in *Summit Contractors, Inc. v. Legacy Corner, LLC*, an agreement with a forum selection clause did not include any limiting language that would allow it to be reconciled with a prior agreement that contained an arbitration clause and was not expressly incorporated into the second agreement.[36]

In sharp contrast to these cases, an irreconcilable conflict does not exist between the Employment Agreement and Arbitration Agreement. The forum selection clause in the Employment Agreement includes explicit limiting language that "the terms of the arbitration agreement shall govern any claims or disputes between [Carter] and C.R. England arising from or related to this [Employment] Agreement."[37] This limitation demonstrates the parties' intent to arbitrate all arbitrable disputes and to litigate in Salt Lake City, Utah only those disputes that are not subject to arbitration, as identified by the Arbitration Agreement.

---

[32] *Id*.
[33] 563 F. App'x 608 (10th Cir. 2014).
[34] *Id*. at 614.
[35] *Id*.
[36] 147 F. App'x 798, 801-802 (10th Cir. 2005).
[37] ECF No. 38-2, Exhibit 1, ¶12.

7

In sum, the plain language of the contract supports a meeting of the minds. Carter's arguments for conflict and ambiguity are not supported by the facts or the cases on which he relies. Therefore, the Arbitration Agreement is valid and binding upon the parties.

### B. Carter's claims fall within the scope of the Arbitration Agreement.

Having determined that the parties entered into a valid written agreement to arbitrate, the Court next turns to whether the Arbitration Agreement encompasses Carter's claims. "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."[38] In his Complaint, Carter asserts a single claim under the FLSA against C.R. England for failing to pay minimum wages.[39] The Arbitration Agreement includes claims of failure to pay wages and violations of federal law, including the FLSA.[40] Pursuant to the Arbitration Agreement, such claims must be submitted and arbitrated on an individual basis only.[41] Courts have found that claims brought under the FLSA are subject to arbitration under valid agreements. "In fact, it turns out that '[e]very circuit to consider the question' has held that FLSA allows agreements for individualized arbitration."[42]

All claims raised in Carter's complaint before this Court must be submitted to individual arbitration. Accordingly, an order compelling arbitration concludes the Court's role in this dispute. However, in lieu of dismissing the action, the Court may administratively close the case.

---

[38] *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).
[39] ECF No. 1 at 7-8.
[40] ECF No. 38-2, Exhibit 2, ¶1.
[41] *Id.* at ¶5.
[42] *Epic Sys. Corp.*, 138 S. Ct. at 1626.

Doing so is appropriate in this instance as it will allow the court greater flexibility if a future issue related to the arbitration or judgment arises, requiring judicial intervention.

## ORDER

IT IS HEREBY ORDERED that C.R. England's Motion to Compel[43] is GRANTED.

IT IS FURTHER ORDERED that Carter's Motion to Certify[44] is DENIED as moot.

The clerk of the court is directed to administratively close this matter.

Signed May 5, 2021.

BY THE COURT

_____
David Barlow
United States District Judge

---

[43] ECF No. 38.
[44] ECF No. 41.